CITY OF FARMINGTON *v.* TOWNSHIP OF FARMINGTON.

1. HIGHWAYS AND STREETS—COVERT ROADS—CITIES—TOWNSHIPS—COST OF IMPROVEMENT.

   That portion of township, incorporated as a city, is not liable for expense of Covert roads thereafter improved which do not traverse incorporated territory (1 Comp. Laws 1929, § 4314 *et seq.*).

2. SAME—COST OF IMPROVEMENT—MISTAKE—FRAUD—CONSTRUCTIVE FRAUD—EQUITY.

   In suit between city and township from which territory of city was taken upon incorporation to recover portion of assessments paid by city after its organization for subsequent improvement of Covert roads which did not traverse the city, evidence *held*, to show that payment which had been made was the result of mistake, not fraud nor, as found by trial judge, constructive fraud, and where many years have elapsed equitable considerations do not require township taxpayers to submit to new assessments to repay to the city taxpayers sums they had paid without question and because of ignorance of the law (1 Comp. Laws 1929, § 2337, § 4314 *et seq.*).

3. EQUITY—PLAINTIFF MUST HAVE SUPERIOR EQUITIES TO BE ENTITLED TO RELIEF.

   Equitable relief is not granted plaintiffs where evidence fails to show they have equities superior to those of defendants.

4. INJUNCTION—TAX SALE—ILLEGAL ASSESSMENTS.

   A county treasurer and the auditor general were properly restrained in suit of city and some of its taxpayers from selling at tax sale property located in the city in consequence of nonpayment of illegal assessments for highways.

5. COSTS—PUBLIC MATTER.

   No costs are allowed in suit relative to illegal assessments for Covert roads, a public matter being involved.

Appeal from Oakland; Doty (Frank L.), J.   Submitted June 5, 1940.   (Docket No. 20, Calendar No. 41,110.)   Decided October 7, 1940.

Restitution of money paid in mistaken belief of duty under contract, see Restatement, Restitution, § 18.

Defense of public policy protecting the payee, see Restatement, Restitution, § 62; defense of change of circumstances, see Restatement, Restitution, § 69.

Bill by City of Farmington, a municipal corporation, against Township of Farmington, a municipal corporation, County of Oakland, a municipal corporation, Charles A. Sparks, Oakland County Treasurer, and George T. Gundry, Auditor General of the State of Michigan, to set aside tax assessments and for an accounting and other relief. Clinton W. Wilber and Howard M. Warner, taxpayers, intervened as parties plaintiff. Board of County Road Commissioners of Oakland County and State Highway Commissioner were joined as parties defendant. From decree rendered, defendant Township of Farmington appeals and plaintiffs cross-appeal. Modified and affirmed.

*E. L. Phillips* and *John J. Schulte, Jr.,* for plaintiffs.

*Glenn C. Gillespie* and *Carl A. Braun,* for defendant township of Farmington.

McAllister, J. The city of Farmington brought its suit in equity against the county of Oakland, its county treasurer, the township of Farmington, and the auditor general to cancel taxes, assessed for the construction of certain highways, and to recover moneys paid on such assessments. Certain taxpayers of the city of Farmington were permitted to intervene as plaintiffs, and the board of county road commissioners of Oakland county and the State highway commissioner were, by order of the court, added as parties defendant. On hearing, the circuit court granted the relief prayed in the bill of complaint, except for a period excluded by the statute of limitations, ordered reassessment of the taxes against the township of Farmington, and decreed repayment to the city of the taxes collected by virtue

of the assessments for the said highway purposes. From such decree, the township of Farmington appeals.

The controversy in this case had its inception in 1926, when the village of Farmington, then a part of the township of Farmington, became incorporated as a city of the same name. Prior to its incorporation, the property within the village had been assessed for taxes as a part of the township. Up to that time, numerous township highways had been improved by the board of county road commissioners, and the cost of such improvements had been assessed against the township at large, in accordance with the provisions of the Covert road law (Act No. 59, Pub. Acts 1915, as amended [1 Comp. Laws 1929, § 4314 *et seq.* (see Stat. Ann. § 9.711 *et seq.*)]). When the city became incorporated in 1926, all property within its borders became exempt from further township taxes, and the debts of the township were required to be apportioned between the township and the newly organized city. 1 Comp. Laws 1929, § 2337 (Stat. Ann. § 5.2224). An agreement was accordingly entered into on March 21, 1926, by the terms of which the city of Farmington assumed 27 per cent. of the existing township indebtedness, including the unpaid portion of the cost of the township roads which had been assessed against the township at large; and the township assumed the remaining 73 per cent. of such indebtedness.

After the incorporation of the city, additional improvements in township roads were undertaken. None of such improved roads, however, traversed the city, and, therefore, the city was not legally assessable for the costs thereof. Nevertheless, because of the common mistake of the township, the county and the city, assessments for these im-

provements were spread by the city on the property therein located, on a basis apportioning 27 per cent. of the costs of such improvements to the city, and the balance to the township. It can readily be seen that the mistake arose out of confusion of the terms of the agreement apportioning the debts between the township and the city at the time of the latter's incorporation, for the agreement apportioning the debts related only to the indebtedness existing at the time of the execution of the agreement between the township and the city; and these assessments thereafter made by the city were based upon the mistaken assumption that the city was obligated in a like proportion of 27 per cent. for the cost of improvements in township roads undertaken subsequent to the agreement apportioning the indebtedness.

This was purely a mistake. Commencing in 1926, the officials of the city prepared the rolls upon which the Covert road assessments were spread. The assessment rolls were certified by the city assessor and equalized by the board of review of the city. The assessment rolls were then placed in the hands of the city treasurer for collection. Each year the city treasurer made settlements with the county treasurer for all taxes spread. The city charged itself for these road assessments which were not paid during the period from 1926 to 1930; paid the county treasurer the amount of taxes collected by its treasurer; and paid from its own funds the amount of such taxes as were delinquent, and which the treasurer had been unable to collect. From 1926 on, the city had a representative on the board of supervisors; and each year there was presented to the board the certificate of the clerk, representing the amount of taxes to be raised for city purposes, as well as statements representing the amounts appor-

tioned for highway construction under the Covert act. With the exception of only one year during this period, the report of the board of supervisors was voted for by the supervisor representing the city of Farmington. It was only after several years that the representative of the city on the board discovered that the city had been assessed for Covert roads built in the township; and when this fact was called to the attention of the board of supervisors, no further assessments for such roads were levied against the city.

It is contended that there was fraud in the making up of the statements of the city clerk in which the Covert road cost was included as part of the amount to be raised by taxation; and to sustain such claim, it is argued that the written figures contained in the statements show that they were inserted by someone other than the city clerk; and that such erroneous figures were suggested by the supervisor of Farmington township and fraudulently inserted in the clerk's statement by a county employee. The circuit court found that there was no actual fraud proved; and that the city taxpayers were innocent victims of their own actions and those of the city officials and the board of supervisors. On a review of the record, we are in accord with the conclusion of the trial court that there is no proof remotely suggesting fraud on the part of any persons concerned.

However, the trial court found that there was constructive fraud growing out of the assessments and collections of the taxes in question. On this issue, we are constrained to differ from the conclusion of the trial judge. We are unable to find any facts or circumstances in this case which would give rise to constructive fraud. From the evidence, we can conclude no more than that there was an honest, un-

intentional mistake on the part of all persons concerned. After the lapse of many years, it would subserve no equitable considerations to require all of the taxpayers of the township to submit to new assessments in order to repay to the taxpayers of the city the sums which they paid without question and because of ignorance of the law. Conceivably, parties have purchased lands within the township in the meantime, relying on titles free from tax incumbrances; other owners, doubtlessly, have in these past years of economic stress entered into commitments in order to pay their taxes, on the basis of what the assessments revealed as their tax obligation. The township did not collect the tax, nor was it responsible for having it spread on the tax rolls of the city. Plaintiffs have no equities superior to those of the taxpayers within the township, as far as is revealed by the evidence in this litigation; and in such case, equitable relief is not granted.

The decree in the circuit court restrained the treasurer of Oakland county and the auditor general from selling at tax sale property located in the city in consequence of nonpayment of the alleged illegal assessments for highways. On the argument appellant admitted that this part of the decree should be affirmed; and it is our opinion that such portion thereof should be sustained.

The decree entered in the circuit court is, therefore, modified in accordance with the foregoing, without costs, as a public matter is concerned.

Bushnell, C. J., and Sharpe, Chandler, North, and Butzel, JJ., concurred with McAllister, J. Wiest, J., concurred in the result. The late Justice Potter took no part in this decision.